UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DR. ANTHONY HILL,

    Plaintiff,

-v-                                                                Case No.:  2:09-cv-0933
                                                                  JUDGE SMITH
                                                                  Magistrate Judge Abel

THE OHIO STATE UNIVERSITY, *et al.*,

    Defendants.

## OPINION AND ORDER

This matter is before the Court pursuant to Plaintiff's Motion to Vacate the Dismissal Order (Doc. 50) and Supplemental Motion for Relief from the Dismissal Order pursuant to Rule 60(b) (Doc. 54).  Defendant opposes any such relief.   For the reasons that follow, the Court **DENIES** Plaintiff's Motions to vacate the dismissal entered in this case on July 26, 2011.

### I.    BACKGROUND

Plaintiff Dr. Anthony Hill, a former tenured professor in the theatre department at The Ohio State University ("OSU"), initiated this action against OSU on October 20, 2009.  Dr. Hill alleged he was discriminated against on the basis of his race and also suffered retaliation when he was denied a promotion from an associate professor to a full professor.  The parties engaged in settlement discussions beginning in August 2010.

There were a number of letters and emails exchanged between the parties on the issue of settlement.  The Court will not include all communications, but will note some of particular importance.  The first time the issue of retroactive pay increases was raised was in a settlement

demand sent by Plaintiff's counsel on September 8, 2010. The letter stated:

> Dr. Hill offers to immediately retire from Ohio State University under the following settlement terms and conditions:
>
> (1) Retroactively raise his salary to $78,000.00 over the past three years in order for him to qualify for retirement benefits based on an annual salary of $78,000.00.
>
> (2) Pay $15,000.00, which represents (5) years that he was not paid the annual salary of $3,000.00 per year pursuant to the 2004 Settlement Agreement.
>
> (3) Non-pecuniary damages of $30,000.00 based on disparate treatment.
>
> (4) Increase recruitment, and retention of African-American students and faculty.

(Ex. C attached to Def.'s Memo. in Opp.).

During the course of these early settlement discussions, Plaintiff's counsel referenced meeting with a representative of SERS and confirmed that his retirement would be based on the retroactive salary provided the settlement agreement has certain conditions. Defense counsel responded that the applicable retirement system was the State Teachers Retirement System ("STRS"), not the State Employees Retirement System ("SERS"). Additionally, defense counsel added: "Please note that OSU and STRS are two separate entities and the agreement between Dr. Hill and OSU cannot be contingent to succeed or fail based on the promises of a third party." (Ex. H attached to Def.'s Memo. in Opp.). No settlement was reached as a result of these discussions, nor after a mediation was held with Magistrate Judge Abel in February 2011.

Settlement discussions were revived in May 2011. Plaintiff's counsel inquired whether OSU would consider renewing its previous offer and Defendant's counsel asked Plaintiff to put his demands in writing. Subsequently, Plaintiff's counsel Mr. Patmon resigned from the case and

new counsel, Mr. Dawicke entered an appearance. Plaintiff's new counsel continued settlement discussions with Defendant's counsel, proposing retroactive salary increases to $86,000 for the previous three academic years, in exchange for Plaintiff's retirement. OSU agreed and submitted a draft settlement agreement to Plaintiff's counsel in June 2011. Plaintiff states that he conferred with STRS, and was advised that OSU employees' pension benefits were calculated on an average of the employee's three highest years' salaries. Plaintiff believed that increasing his salary the final three years to $86,000 from $55,559 (the average of his three highest years' salaries) would result in a monthly pension benefit increase from $2,037 to $3,201.

Plaintiff's counsel made some small changes to the language of the settlement agreement, including changing resign to retire. There was no mention during these latter settlement discussions of how the proposed settlement would affect Dr. Hill's retirement income, nor was there any language proposed for the settlement agreement conditioning settlement on STRS approval. The settlement agreement was finalized on June 23, 2011. Then, on July 8, 2011, Plaintiff filed a notice of voluntary dismissal (Doc. 47). The case was ultimately dismissed by this Court on July 26, 2011 (Doc. 48).

On July 28, 2011, Plaintiff's counsel contacted defense counsel after Dr. Hill contacted STRS to inquire about the delay in his salary adjustment. Dr. Hill apparently learned that his pension was to be based on his actual final three years highest salaries, rather than the retroactive amount agreed to by the parties. Assistant Ohio Attorney General Mike McPhillips responded that: "OSU is confident that the reason Dr. Hill received the information he did from STRS is based on the timing of his communication with STRS, and that once all the necessary paperwork is processed, Dr. Hill will receive his retirement payments based on an $86,000 salary for the

years at issue." (Ex. C to Pl.'s Supp. Mot.).

Pursuant to the settlement agreement, OSU tendered two checks to Plaintiff on July 14, 2011, one for $62,962.74, the net amount after withholdings from $118,110.90, and the second for $10,000. Pursuant to its statutory obligations which were set forth in the settlement agreement, OSU reported Plaintiff's retroactive salary increases to STRS. OSU also submitted the employee's share to STRS that was withheld from the aforementioned check, as well as its contribution as the employer to STRS. However, on October 27, 2011, STRS issued a letter explaining that it did not consider the retroactive increases to be compensation for the purposes of STRS. The money submitted by OSU to STRS was ultimately returned to OSU.[1] The letter provided in pertinent part:

> The settlement agreement between the university and Dr. Hill specifically provides that in consideration of resolving any and all of their disputes, Dr. Hill agrees to voluntarily retire from his position effective June 30, 2011, and that OSU agrees to retroactively increase Dr. Hill's salary for his last three years of employment. Because the payments made to Dr. Hill pursuant to the settlement agreement are in consideration of his agreement to retire, they are not included in compensation under the terms of section 3307.01(L) of the Ohio Revised Code.

(Ex. N, attached to Def.'s Memo. in Opp.).

## II.  DISCUSSION

Plaintiff Dr. Hill filed this Motion for Relief from Dismissal Order pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure. Plaintiff is seeking an order joining the Ohio State Teachers Retirement System as an additional party to this action; ordering OSU to remit to

---

[1] OSU calculates that the 3 years of back pay should have been $90,732, however, due to an accounting error, Plaintiff actually received $104,000. 10% of the back pay was withheld by OSU for Dr. Hill's STRS contribution and OSU was to pay 13% of that amount to STRS for the employer's contribution. The amount OSU submitted to STRS and was ultimately returned was for approximately $21,000.

-4-

STRS a sum sufficient to fund Plaintiff's increase pension benefits and ordering STRS to accept that remittance to increase Plaintiff's pension benefits; and in the alternative, order OSU to purchase an annuity for Plaintiff's benefits in an amount sufficient to fund Plaintiff's increased pension; or an order vacating the dismissal entry and settlement agreement.

Defendant OSU argues that Plaintiff is seeking relief that is not permitted under Rule 60(b). Defendant argues that the Court lacks jurisdiction to modify the parties' settlement agreement as this case has been dismissed with prejudice. Further, Plaintiff cannot establish that there was a mutual mistake to justify relief under Rule 60(b).

The Court will first consider Defendant's jurisdiction argument in light of the fact that this case was dismissed with prejudice and then will consider whether Plaintiff is entitled to any relief under Rule 60(b) of the Federal Rules of Civil Procedure.

**A.     Jurisdiction over Plaintiff's Motion for Relief from Dismissal Order**

Generally, a district court that has dismissed a case lacks jurisdiction over a settlement agreement that preceded dismissal. However, there are certain exceptions. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994). In *Kokkonen*, the parties entered into a settlement agreement and subsequent stipulation of dismissal. The dismissal entry made no reference to the settlement agreement. One party moved to enforce the settlement agreement and the other objected. Although the district court and the Ninth Circuit held that the trial court had inherent power to exercise jurisdiction over settlement agreements, the United States Supreme Court disagreed. Justice Scalia, writing for a unanimous Court, recognized that the concept of limited federal jurisdiction does not permit the court to exercise ancillary jurisdiction over any agreement that has as part of its consideration the dismissal of a case before it. *Id.* at 381. The

Court did recognize that:

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal – – either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist. That, however, was not the case here.

*Id.* at 397.

The Sixth Circuit recently addressed this issue in *Moore v. United States Postal Serv.*, 369 Fed. Appx. 712, 716-17 (6th Cir. 2010), holding that a district court retains jurisdiction over a settlement agreement when the judgment entry dismissing the underlying case provides "[t]he Court retains jurisdiction over the settlement contract for the purposes of its enforcement." Therefore, a district court may retain jurisdiction over the settlement agreement if the dismissal entry incorporates the terms of the settlement agreement, or if the court specifically retains jurisdiction over the settlement.

Plaintiff Dr. Hill argues that since specific performance is impossible, OSU should not be permitted to avoid its financial obligations under the settlement agreement, relying on *McMillin v. Davidson Industries, Inc.*, 2005 Ohio App. LEXIS 221 (5th Dist. 2005). In *McMillin*, the parties participated in a mediation with the trial judge and reached a settlement that provided the employer would transfer its interest in a parcel of property to the employee. The parcel of property was estimated to be worth between $80,000-$90,000. The employer further agreed to satisfy the lien on the property so that it could be transferred free and clear. However, prior to satisfying the lien, the bank foreclosed on the building making the transfer impossible. The employee then filed a motion to enforce the settlement agreement. The trial court enforced the

settlement agreement by ordering that the employer pay the employee the estimated value of the property. The appellate court affirmed, holding that "the parties understood that they were settling a claim for money damages." *Id.* at ¶ 28. Plaintiff argues, based on *McMillin*, that the parties agreed to a settlement that was premised on an increase in Dr. Hill's pension and that "[b]oth parties also agreed that the salary adjustment was, in part, intended to require an elevation of Dr. Hill's pension." (Pl.'s Mot. at 6). Plaintiff, therefore, requests this Court order OSU to purchase an annuity in a determined sum of money necessary to support Dr. Hill's increased pension benefits.

Defendant OSU asserts that Plaintiff's reliance on *McMillin* is misplaced and the Court agrees. In *McMillin,* a hearing was held on the motion to enforce the settlement agreement with a different judge, so that the original judge could be a witness. The case at bar differs in that the settlement agreement was not negotiated before any judge of this Court, nor was the Court even advised of the existence of a settlement agreement. The parties merely stipulated to the voluntary dismissal.

The Court signed off on the proposed dismissal entry submitted by Plaintiff with his Notice of Voluntary Dismissal. (*See* Attachment #1 to Doc. 47). The dismissal entry specifically provides: "Pursuant to the Stipulated Notice of Voluntary Dismissal Pursuant to Civil Rule 41(a), it is hereby ORDERED that the within action, and all claims asserted therein, be dismissed with prejudice, with each party bearing its own costs." (Doc. 48).

The exceptions to the lack of jurisdiction over settlement agreements do not apply in this case as the dismissal entry did not incorporate the terms of the settlement agreement, nor did the Court retain jurisdiction over this matter. This Court therefore lacks jurisdiction to enforce the

settlement agreement, including any authority to force Defendant to purchase an annuity as suggested by Plaintiff. The Court also lacks any authority to add an additional party after the case was closed. Plaintiff should have recognized that STRS was an indispensable party to fulfilling the settlement agreement and added STRS as a party while the case was open.

### B.  Rule 60(b)(1) of the Federal Rules of Civil Procedure

Even assuming that the Court has jurisdiction to consider Plaintiff's Motions, Plaintiff's arguments lack merit. Plaintiff moves to vacate the July 26, 2011 dismissal order and rescind the settlement agreement pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure which provides:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;

"[T]he party seeking to invoke [Fed. R. Civ. P. 60(b)] bears the burden of establishing that its prerequisites are satisfied." *McCurry v. Adventist Health Sys. / Sunbelt Inc.*, 298 F.3d 586, 592 (6th Cir. 2002); *Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2002). A contract may be rescinded when the agreement is based on mutual mistake of law or fact. *See State ex rel. Walker v. Lancaster City School Dist. Bd. of Ed.*, 79 Ohio St.3d 216, 200 (Ohio 1997). Where "there is a mutual mistake as to a material part of the contract and where the complaining party is not negligent in failing to discovery the mistake" rescission is proper. *Reilley v. Richards*, 69 Ohio St.3d 352, 352-53 (Ohio 1994).

In order to meet this burden, Plaintiff argues that both parties believed that retroactively increasing Dr. Hill's salary for his final three years, would increase his retirement benefits.

Plaintiff asserts that it was based on this understanding that the parties entered into the settlement agreement and ultimately dismissed the case.  Plaintiff references previous agreements made by OSU involving retroactive salary adjustments that increased pension benefits with individuals through the Ohio Public Employees Retirement System.  Plaintiff also asserts that he "believed that there would be no issue with the retroactive increases based on representations made by STRS that it would calculate his pension benefits based solely on whatever salaries OSU reported."  (Pl.'s Supp. Mot. at 8).  The only evidence Plaintiff offers that OSU was operating under the same mistake is an email by attorney McPhillips more than one month after the settlement agreement was fully executed.  Defendant's attorney McPhillips states that he made these comments based on the representations of Plaintiff's counsel and he did not have knowledge about the effects of the retroactive salary increases on Plaintiff's pension benefits.  (McPhillips Aff. ¶ 10).

     Plaintiff further argues that the pension benefit increase resulting from the increased salary adjustment "was an indispensable condition of settlement."  (Pl.'s Supp. Mot. at 8, citing Patmon Aff. ¶ 4).  Plaintiff again states in his affidavit submitted in support of his reply brief, that "I was clear that the increased pension benefits were the key component to resolving this matter."  (Hill Aff. ¶ 3).  Plaintiff contends that OSU was aware of this.  Regardless of what OSU knew during the negotiations, however, these terms were not reflected in the Settlement Agreement.  The only reference to STRS is in paragraph 2 of the Settlement Agreement and Release of Claims in which OSU agrees to pay Plaintiff back pay, "including the employee's contribution to the State Teachers Retirement System ("STRS").  Additionally, OSU agrees to report the back pay remittance to STRS and agrees to pay any and all employer's contributions and fines to STRS."

(Attached as Exhibit A to Pl.'s Supp. Mot.).

Although Plaintiff doesn't offer this evidence, the Court discovered that Defendant OSU attempted to fulfill its obligations under the Settlement Agreement by withholding Plaintiff's contribution to STRS and submitting it, along with OSU's contribution to STRS. Defendant OSU argues that this does not support Plaintiff's claims that the parties were operating under a mutual mistake, however, because the back pay language of the Settlement Agreement is standard language. Defendant OSU fully complied with the terms of the Settlement Agreement by submitting the money to STRS and did not make any additional promises that such contributions would be accepted and increase Plaintiff's pension benefits.

Additionally, paragraph 11 of the Settlement Agreement states:

The Parties to this Agreement represent and affirm that this is a fully integrated agreement, that this Agreement sets forth the entire agreement between the Parties hereto, that no other conditions previously discussed either during or outside of settlement discussions may be interpreted as being a part of this Agreement, and that this Agreement fully supersedes any and all prior discussions, agreements, transmissions or understandings between the Parties or their representatives regarding the subject matter of this Agreement.

(*Id*.).

While Plaintiff has illustrated how he was mistaken regarding how the retroactive pay increase would affect his pension benefits, there is no evidence that OSU agreed to this or made a similar mistake. Defendant OSU argues that the mistake was unilateral, not mutual. The Sixth Circuit has held that a party cannot obtain relief from judgment based on a mistake that is unilateral. *Brown v. County of Genessee*, 872 F.2d 169 (6th Cir. 1989). The parties in *Brown* settled the lawsuit and agreed to hire the plaintiff as a deputy at the third highest of seven possible pay levels. Plaintiff's counsel miscalculated what would have been the highest pay level his client

-10-

could have attained had she been hired when she initially applied in 1982. Plaintiff discovered that some employees hired in 1982 were being paid at the fourth highest pay level. Plaintiff successfully moved to vacate the judgment in district court on mistake grounds, but the Sixth Circuit reversed.

In *Brown*, the Sixth Circuit stated that "[o]ne who attacks a settlement must bear the burden of showing that the contract he had made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." 872 F.2d at 174. "A unilateral mistake is not sufficient to allow the mistaken to limit or avoid the effect of an otherwise valid settlement agreement." *Id.* at 174-75. Further, in *Brown*, the Court recognized that even if the county negotiated believing it was probable that the third highest level was the highest level plaintiff could have attained, that subjective belief was not enough to supercede the express terms of a valid contract. In fact, plaintiff's attorney could have found out through public records whether or not its subjective beliefs were correct and "the failure of Brown's counsel . . . cannot be imputed to the county[.]" *Id.* at 175.

The same applies to the case at bar. Even if Defendant OSU negotiated believing the retroactive pay increases would impact Dr. Hill's pension benefits, Plaintiff was represented by competent counsel, who could have confirmed the affect of the settlement on the pension benefits. Some version of the applicable Ohio Revised Code section, currently §3307.01(L), that provides that payments made in consideration of retirement are not considered compensation, has been part of the Ohio Revised Code for more than 20 years. The Sixth Circuit has held that "[g]ross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for 60(b)(1) relief." *FHC Equities, L.L.C. v. MBL Life Assur. Corp.*, 188 F.3d 678, 684-85 (6th Cir. 1999)

-11-

(quoting *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 356-57 (5th Cir. 1993)).

During the settlement negotiations, Plaintiff's counsel made reference to Defendant's counsel that Plaintiff was talking to STRS about his benefits, however, Defendant did not have any role in these discussions.  If the pension benefits were such a key factor in the negotiations, then Plaintiff could have proposed language in the settlement agreement that made it contingent upon approval by STRS.  Plaintiff assumed the risk by failing to obtain third party approval (STRS).  *See McCormick v. City of Chicago*, 230 F.3d 319 (7th Cir. 2000) (Court refused to reopen case on mistake grounds when settlement agreement involved reinstatement of officer, which involved approval of FOP, who was not a party and refused to reinstate. The Seventh Circuit  held that since "the settlement was dependent upon the FOP giving its consent, McCormick's attorney had a particularly strong incentive to make sure that his client was protected in the event the FOP decided it could not agree that McCormick's seniority should be restored.").  Further, the dismissal entry could have been more detailed and incorporated the terms of the settlement agreement.  There is no question that Plaintiff, through counsel, reviewed the settlement agreement, as minor changes were made and signatures were affixed.

Based on the aforementioned, the Court does not find that there was a mutual mistake of the parties in entering into this valid settlement agreement.  Plaintiff, however, appears to have made a unilateral mistake in entering the settlement agreement without fully researching how the retroactive salary increases would affect Plaintiff's STRS pension payments.  Accordingly, "[a] motion under Rule 60(b) cannot be used to avoid the consequences of a party's decision to settle the litigation. . .. Generally speaking a party who makes an informed choice as to a particular course of action will not be relieved of the consequences when it subsequently develops

that the choice was unfortunate." *Steinhoff v. Harris*, 689 F.2d 270, 275 (6th Cir. 1983).

Based upon the foregoing, the Court concludes that Plaintiff has not met his burden of demonstrating a mutual mistake as contemplated by Rule 60(b)(1) of the Federal Rules of Civil Procedure. Accordingly, the Court **DENIES** Plaintiff's Motion for Relief from the Dismissal Order.

## III. DISPOSITION

Based on the aforementioned, the Court **DENIES** Plaintiff's Motion for Relief from the Dismissal Order.

The Clerk shall remove Documents 50 and 54 from the Court's pending motions list.

This case shall remain closed.

**IT IS SO ORDERED.**

                                                   */s/ George C. Smith*
                                                   **GEORGE C. SMITH, JUDGE**
                                                   **UNITED STATES DISTRICT COURT**